United States District Court
Southern District of Texas
**ENTERED**
June 30, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUXEYARD, INC. and AMIR MIRESKANDARI, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-20-1658 |
| OFFIT KURMAN, P.A. and FRANK NOYES, | § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

In this removed attorney malpractice action, Plaintiffs Luxeyard, Inc. ("Luxeyard") and Amir Mireskandari (collectively, "Plaintiffs") allege state-law negligence, breach of fiduciary duty, fraud, and consumer protection claims against Defendants Offit Kurman, P.A. ("Offit Kurman") and Frank Noyes (collectively, "Defendants").[1] Pending before the court are Defendants' Motion to Dismiss for Forum Non Conveniens and Incorporated Memorandum of Law in Support ("Motion to Dismiss") (Docket Entry No. 4) and Plaintiffs' Motion to Remand and Incorporated Memorandum of Law in

---

[1] Plaintiff's Original Petition, Exhibit A to Defendants' Notice of Removal ("Notice of Removal"), Docket Entry No. 1-3, pp. 2, 15-18. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

Support ("Motion to Remand") (Docket Entry No. 6). For the reasons explained below, the Motion to Remand will be denied and the Motion to Dismiss will be granted.

## I. Factual and Procedural Background

Plaintiff Luxeyard is a Delaware corporation headquartered in Houston, Texas, and plaintiff Amir Mireskandari is a business owner who was involved in taking Luxeyard's stock public in 2012.[2] Plaintiffs were named as defendants in shareholder litigation brought in the Delaware state courts in March and April of 2018.[3] In February of 2019 Plaintiffs hired defendant Offit Kurman to represent them in the Delaware litigation; defendant Frank Noyes was the primary attorney in the representation.[4] Offit Kurman is a professional corporation incorporated in Maryland;[5] Plaintiffs allege and Defendants deny that Offit Kurman is also incorporated in Delaware.[6]

Pursuant to this representation Mireskandari signed two engagement letters (the "Engagement Agreements") on behalf of

---

[2] Id. at 5 ¶ 13, 6 ¶ 14.

[3] Id. at 6 ¶¶ 15-16.

[4] Id. at 7 ¶ 19.

[5] Certification of Incorporation by the State of Maryland Department of Assessments and Taxation ("Maryland Certification of Incorporation"), Exhibit C to Defendants' Response in Opposition to Plaintiffs' Motion to Remand and Incorporated Memorandum of Law in Support ("Defendants' Response"), Docket Entry No. 11-3, p. 2.

[6] Plaintiff's Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-3, pp. 2-3 ¶ 4; Defendants' Response, Docket Entry No. 11, p. 2.

himself and Luxeyard.[7] Both Engagement Agreements contained the following clause:

> By signing below you acknowledge that you have reviewed and accepted the fee arrangement described in this letter, as well **as Offit Kurman's Terms and Conditions of Representation** - available online at www.offitkurman.com/DEterms17 or in hard copy at your request, which are expressly incorporated herein.[8]

The "Terms and Conditions of Representation" ("Terms and Conditions") contain a clause that states:

> . . . You agree that by engaging Offit Kurman, you submit to the jurisdiction of the courts of the State of Delaware, and that the sole venue for all matters, claims, disputes and actions related to, or arising out of your engagement of Offit Kurman are the courts of the State of Delaware located in New Castle County, Delaware.[9]

Plaintiffs allege that Mireskandari was presented with the Engagement Agreements in person and required to sign them with no opportunity to review the separate Terms and Conditions.[10]

---

[7]Engagement Letter Re: <u>Allen et. al v. LuxeYard, Inc.</u> ("First Engagement Letter"), Exhibit A-1 to Motion to Dismiss, Docket Entry No. 4-2, pp. 2-3; Engagement Letter Re: <u>Weinstein v. LuxeYard, Inc.</u> ("Second Engagement Letter"), Exhibit A-2 to Motion to Dismiss, Docket Entry No. 4-3, pp. 2-3.

[8]First Engagement Letter, Exhibit A-1 to Motion to Dismiss, Docket Entry No. 4-2, p. 3; Second Engagement Letter, Exhibit A-2 to Motion to Dismiss, Docket Entry No. 4-3, p. 2.

[9]Terms and Conditions, Exhibit A-3 to Motion to Dismiss, Docket Entry No. 4-4, p. 3 ¶ 11.

[10]Plaintiffs Luxeyard, Inc.'s and Amir Mireskandari's Response to Defendants' Motion to Dismiss for Forum Non Conveniens and Incorporated Memorandum of Law in Support ("Plaintiffs' Response"), Docket Entry No. 7, p. 20; see Declaration of Amir Mireskandari ("Mireskandari Declaration"), Exhibit 1 to Plaintiffs' Response, Docket Entry No. 7-1, pp. 2-3 ¶ 4.

Defendants allege that Plaintiffs were provided with the Engagement Agreements a week before they were signed.

In October of 2019 Defendants withdrew as counsel for Plaintiffs before the Delaware Court of Chancery because Plaintiffs had failed to pay outstanding invoices.[11]  On April 13, 2020, Plaintiffs filed this action in the 151st District Court of Harris County, Texas, against Defendants alleging claims of negligence, breach of fiduciary duty, fraud, and violation of the Texas Deceptive Trade Practices Act.[12]  Defendants timely removed the action to this court on the basis of diversity jurisdiction on May 12, 2020.[13]

On May 18, 2020, Defendants filed their Motion to Dismiss, contending that a mandatory forum-selection clause requires the court to dismiss the action for forum non conveniens.[14]  Plaintiffs responded on May 28, 2020,[15] and Defendants replied on June 4, 2020.[16]

---

[11] Plaintiff's Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-3, p. 11 ¶ 31, p. 12 ¶¶ 33-34.

[12] Id. at 2, 15-18.

[13] Notice of Removal, Docket Entry No. 1, pp. 1-2.

[14] Motion to Dismiss, Docket Entry No. 4, pp. 1, 12.

[15] Plaintiffs' Response, Docket Entry No. 7.

[16] Defendants' Reply in Support of Defendants' Motion to Dismiss for Forum Non Conveniens and Incorporated Memorandum of Law in Support ("Defendants' Reply"), Docket Entry No. 9.

On May 26, 2020, Plaintiffs filed their Motion to Remand contending that the court lacks subject-matter jurisdiction because the parties are not completely diverse.[17]  Defendant responded on June 12, 2020,[18] and Plaintiffs did not reply.[19]

## II.  Diversity Jurisdiction

### A.  Legal Standard

Plaintiffs contend that the court must remand the action because it lacks subject-matter jurisdiction.  Under 28 U.S.C. § 1441(a) any state court civil action over which a federal court would have original jurisdiction may be removed from state to federal court.  "The party seeking to assert federal jurisdiction . . . has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists."  New Orleans & Gulf Coast Railway Co. v. Barrois, 533 F.3d 321, 327 (5th Cir. 2008).  Jurisdictional facts must be judged as of the time of the filing of the state court petition.  White v. FCI USA, Inc., 319 F.3d 672, 674 (5th Cir. 2003) (per curiam).  "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."  Manguno v. Prudential Property and Casualty Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).

---

[17]Motion to Remand, Docket Entry No. 6, pp. 1, 3.

[18]Defendants' Response, Docket Entry No. 11.

[19]See Local Rule 7.4(E) (stating that a reply brief may be filed within 7 days from the date a response is filed).

Federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Diversity of citizenship exists between the parties if each plaintiff has a different citizenship from each defendant. Getty Oil Corp. v. Insurance Co. of North America, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. See Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 857 (5th Cir. 2003).

"The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." Coury v. Prot, 85 F.3d 244, 249 (5th Cir. 1996). In making such an assessment, the court "may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of parties." Id.

B. **Analysis**

Defendants' Notice of Removal alleges that Mireskandari is a citizen of Texas, Luxeyard is a citizen of Texas and Delaware, Offit Kurman is a citizen of Maryland, and Frank Noyes is a citizen of Pennsylvania.[20] Plaintiffs contend complete diversity is lacking

---

[20]Notice of Removal, Docket Entry No. 1, p. 2 ¶¶ 6-10.

because Offit Kurman is incorporated in and thus is also a citizen of Delaware.[21] Defendants respond that Offit Kurman is only incorporated in Maryland. A corporation is a "citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

Defendants bear the burden of proving subject-matter jurisdiction. Defendants attach to their response: (1) Offit Kurman's original Maryland articles of incorporation dated May 28, 1987;[22] (2) a certificate of incorporation issued by the State of Maryland Department of Assessments and Taxation,[23] and (3) a State of Delaware Foreign Corporation Certificate recognizing Offit Kurman as a foreign corporation organized under the laws of Maryland.[24] Plaintiffs only provide a screenshot from the Delaware Department of State's website, which lists Offit Kurman as a corporation of "foreign" residency.[25] In Delaware the term "foreign corporation" denotes a corporation organized under the laws of any jurisdiction other than Delaware. See Del. Code tit. 8, § 371;

---

[21]Motion to Remand, Docket Entry No. 6, p. 4.

[22]Articles of Incorporation, Exhibit B to Defendants' Response, Docket Entry No. 11-2, p. 2.

[23]Maryland Certification of Incorporation, Exhibit C to Defendants' Response, Docket Entry No. 11-3, p. 2.

[24]State of Delaware Foreign Corporation Certificate, Exhibit E to Defendants' Response, Docket Entry No. 11-5, pp. 2-3.

[25]Offit Kurman, P.A. Entity Details, State of Delaware, Exhibit 2 to Motion to Remand, Docket Entry No. 6-2, p. 2.

Chupany v. Stroup, Civil Action No. 19-689-RGA-SRF, 2019 WL 5111952, at *4 & n.7 (D. Del. Aug. 9, 2019) (explaining that Delaware refers to corporations incorporated there as "domestic" and those incorporated elsewhere as "foreign"). The evidence submitted by both parties therefore shows that Offit Kurman is incorporated in Maryland and not incorporated in Delaware. The court therefore concludes that Offit Kurman is a citizen of Maryland and not Delaware.

Because Plaintiffs are citizens of Texas and Delaware and Defendants are citizens of Maryland and Pennsylvania, there is complete diversity between the parties. It is not disputed that the amount-in-controversy requirement is satisfied. Removal of the action was therefore proper because the court could have exercised original jurisdiction over the case under 28 U.S.C. § 1332(a). Accordingly, Plaintiffs' Motion to Remand will be denied.

### III. Motion to Dismiss for Forum Non Conveniens

Defendants contend that a mandatory forum-selection clause requires Plaintiffs to pursue their claims in Delaware state court, and accordingly that the court should dismiss the action on forum non conveniens grounds under Atlantic Marine Construction Co., Inc. v. United States District Court, 134 S. Ct. 568 (2013).[26] Plaintiffs respond that (1) they did not consent to the forum-selection clause, (2) the forum-selection clause violates public

---

[26]Motion to Dismiss, Docket Entry No. 4, p. 13.

policy, and (3) the clause establishes Delaware courts have permissive rather than mandatory jurisdiction over disputes arising under the Engagement Agreements.

## A. Plaintiffs Consented to the Incorporated Terms

Plaintiffs contend that they did not consent to the forum-selection clause. They argue that Mireskandari was not given the requisite opportunity to review the Terms and Conditions that contain the forum-selection clause.[27] Whether the parties agreed to a forum-selection clause is a matter of state law. Valero Marketing and Supply Co. v. Baldwin Contracting Co., Inc., Civil Action No. H-09-2957, 2010 WL 1068105, at *2 (S.D. Tex. March 19, 2010) (citing Rimkus Consulting Group, Inc. v. Rault Resources, Inc., Civil Action No. H-07-1494, 2008 WL 901483, at *4 (S.D. Tex. March 31, 2008)). The court applies the choice-of-law rules of the forum state to determine what state law applies. Smith v. Waste Management, Inc., 407 F.3d 381, 384 n.1 (5th Cir. 2005). The parties agree that Texas law should be applied because there is no conflict between Texas and Delaware law regarding the contractual issue before the court.[28] See Schneider National Transport v. Ford Motor Co., 280 F.3d 532, 536 (5th Cir. 2002) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary.").

---

[27]Plaintiffs' Response, Docket Entry No. 7, p. 15.

[28]Motion to Dismiss, Docket Entry No. 4, p. 15; Plaintiffs' Response, Docket Entry No. 7, p. 15.

The parties agree the Engagement Agreements are their contracts. The forum-selection clause in the Terms and Conditions is part of the parties' agreements if the Engagement Agreements effectively incorporate it by reference. See In re D. Wilson Construction Co., 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding) ("A contractual term is not rendered invalid merely because it exists in a document incorporated by reference."). Plaintiffs do not dispute that the agreements incorporate the Terms and Conditions by reference; instead, they contend that they cannot be bound to the Terms and Conditions because Mireskandari had no opportunity to read or review the Terms and Conditions at the meeting where he signed the agreements.

"Unless prevented by trick or artifice, one who signs a contract 'must be held to have known what words were used in the contract and to have know their meaning, and he must also be held to have known and fully comprehend the legal effect of the contract.'" Moore v. Moore, 383 S.W.3d 190, 196 (Tex. App.-Dallas 2012, pet. denied) (quoting Nguyen Ngoc Giao v. Smith & Lamm, P.C., 714 S.W.2d 144, 146 (Tex. App.-Houston [1st Dist.] 1986, no writ). "[A] separate document will become part of the contract where the contract makes 'clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt.'" One Beacon Insurance Co. v. Crowley Marine Services, Inc., 648 F.3d 258, 268 (5th Cir. 20011) (quoting 11 Williston on Contracts § 30:25 (4th ed. 1999)). Terms incorporated by reference will be

valid if the parties had knowledge of and assented to the incorporated terms. One Beacon, 648 F.3d at 268. "Notice of incorporated terms is reasonable where . . . '[a] reasonably prudent person should have seen' them." Id. (quoting Coastal Iron Works, Inc. v. Petty Ray Geophysical, Division of Geosource, Inc. (5th Cir. 1986)). The Fifth Circuit, applying general contract principles, has held that a party has had reasonable notice of incorporated terms located on a website if the contract clearly referenced those terms. See One Beacon, 648 F.3d at 263, 268.

The Engagement Agreements between Plaintiffs and Defendants expressly state that they incorporate the Terms and Conditions by reference, present a hyperlink so that they may be reached on the internet, and state that they are available in hard copy "on request."[29] This notice is given in the fifth of six paragraphs of agreements that are less than two pages in length.[30] Mireskandari was presented with the Engagement Agreements and asked to sign them in person.[31] In accordance with the principles described above, the relevant question is not whether Mireskandari actually reviewed the Terms and Conditions, but whether he could have reviewed them had he wished to.

---

[29]First Engagement Letter, Exhibit A-1 to Motion to Dismiss, Docket Entry No. 4-2, p. 3; Second Engagement Letter, Exhibit A-2 to Motion to Dismiss, Docket Entry No. 4-3, p. 2.

[30]Id.

[31]Mireskandari Declaration, Exhibit 1 to Plaintiffs' Response, Docket Entry No. 7-1, p. 2 ¶ 4.

The only evidence Plaintiffs present on this issue is Mireskandari's declaration, which states:

> I was not provided a copy of [the Terms and Conditions] at this meeting prior to signing . . . [and] I was not afforded the opportunity to access the internet website referenced in the engagement agreements. . . . Mr. Noyes presented me with the engagement agreements and did not tell [me] that by signing those agreements I would be consenting to a forum selection clause . . . .[32]

Even assumed to be true, this statement does not establish that Mireskandari had no opportunity to review the Terms and Conditions had he wished. Mireskandari was presented with Engagement Agreements that expressly state that they incorporate the Terms and Conditions by reference. This notified Mireskandari of the terms because a reasonably prudent person would have seen the notice. Given such notice, it became Mireskandari's burden to review the Terms and Conditions, perhaps by requesting the hard copy as stated in the Engagement Agreements or by pausing the meeting to visit the website. When Mireskandari chose to sign the Engagement Agreements without doing so, he agreed to be bound by the unread Terms and Conditions; knowledge and assent to the Terms and Conditions is therefore imputed to Luxeyard and him. See One Beacon, 648 F.3d at 268, 270. Plaintiffs have not submitted any evidence of "trick or artifice" that deprived Mireskandari of the opportunity to review the Terms and Conditions.

---

[32]Mireskandari Declaration, Exhibit 1 to Plaintiffs' Response, Docket Entry No. 7-1, p. 2 ¶ 4.

Plaintiffs cite several cases where parties were held to not be bound by terms incorporated by reference, but they are distinguishable because they involved external terms that were not referenced or sufficiently identified by the parties' binding agreement. In <u>James v. Global TelLink Corp</u>, 852 F.3d 262 (3d Cir. 2017), the court held that a verbal statement by a service's automated telephone system that the service was governed by terms available on a website did not bind customers because that statement did not occur in circumstances that created a binding two-way agreement. <u>Id.</u> at 266. In <u>Jackson v. Royal Caribbean Cruises, Ltd.</u>, 389 F. Supp. 3d 431 (N.D. Tex. 2019), the court refused to enforce incorporated terms because the document that identified and ostensibly incorporated them was not the contract that governed the parties' relationship. <u>Id.</u> at 448-449. And in <u>Bacon v. Avis Budget Group, Inc.</u>, 357 F. Supp. 3d 401 (D.N.J. 2018), the court declined to enforce incorporated terms because the terms were not identified in the contract with sufficient clarity to give notice. <u>Id.</u> at 418-19, 423. These cases are inapposite because there is no question that the Engagement Agreements govern the parties' relationship and expressly identify and incorporate the Terms and Conditions. The court concludes that Plaintiffs are bound by the forum-selection clause contained in the Terms and Conditions.

## B. The Clause is Not Unenforceable on Public Policy Grounds

Plaintiffs argue that the agreement to the forum-selection clause was procured in violation of the Texas Disciplinary Rules of Professional Conduct and therefore it is unenforceable as contrary to public policy.[33] Defendants respond that the Texas Disciplinary Rules of Professional Conduct cannot render the agreement unenforceable because they do not apply to lawyers not licensed to practice in Texas such as Frank Noyes.[34]

Courts in the Fifth Circuit analyze the enforceability of forum-selection and choice-of-law clauses under federal law, regardless of whether jurisdiction is based on diversity or on a federal question. See Haynsworth v. The Corporation, 121 F.3d 956, 962 (5th Cir. 1997); International Software Systems, Inc. v. Amplicon, Inc., 77 F.3d 112, 115 (5th Cir. 1996). Under federal law forum-selection and choice-of-law provisions are presumptively valid. Mitsui & Co. (USA), Inc. v. Mira M/V, 111 F.3d 33, 35 (5th Cir. 1997) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3360 (1985)). The presumption of enforceability may be overcome by a clear showing that the clause is unreasonable under the circumstances. Haynsworth, 121 F.3d at 963 (citing M/S Bremen v. Zapata Off-shore Co., 92 S. Ct. 1907, 1913 (1972)). "Unreasonableness potentially exists where . . .

---

[33]Plaintiffs' Response, Docket Entry No. 7, p. 21.

[34]Defendants' Reply, Docket Entry No. 9, pp. 4-5.

enforcement of the forum-selection clause would contravene a strong public policy of the forum state." Haynsworth, 121 F.3d at 963.

Some of the Texas Rules of Professional Conduct serve as expressions of public policy that may invalidate contracts executed in violation of them. Dardas v. Fleming, Hovenkamp & Grayson, P.C., 194 S.W.3d 603, 613 (Tex. App.-Houston [14th Dist.] 2006, pet. denied). But the rules also expressly limit their reach to attorneys admitted to practice law in Texas or admitted before a court in Texas for a specific proceeding. Tex. Disciplinary R. Prof'l Conduct 8.05(a). The Texas Rules of Professional Conduct do not regulate the conduct of non-Texas lawyers working on non-Texas matters. Plaintiffs' theory of unenforceability fails because it incorrectly assumes the Texas rules apply to Defendants, who are not attorneys licensed to practice in Texas.[35] The court cannot conclude that Texas has a "strong public policy" against the enforcement of a forum-selection clause based on the conduct of an out-of-state attorney whose conduct Texas does not regulate. Accordingly, the forum-selection clause is not unenforceable due to public policy expressed by the Texas Disciplinary Rules of Professional Conduct.

## C.   **The Forum-Selection Clause is Mandatory**

Plaintiffs argue that the forum-selection clause is permissive and only allows, rather than requires, actions related to the

---

[35]Declaration of Frank E. Noyes, II, Exhibit A to Defendants' Reply, Docket Entry No. 9-1, p. 2 ¶ 3.

Engagement Agreements to be filed in the courts of the State of Delaware.[36] Defendants respond that the clause requires all claims to be filed there.[37] The court construes a contractual provision as a matter of law unless it determines that it is ambiguous. See D.E.W., Inc. v. Local 93, Laborers' International Union of North America, 957 F.2d 196, 199 (5th Cir. 1992).

A cardinal principle of contract construction is that "a document should be read to give effect to all its provisions and to render them consistent with each other." Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1219 (1995). "Each provision [of a contract] is to be given its reasonable, natural, and probable meaning when considered in relation to the whole, and each must be 'construed with reference to every other provision so that the effect of one upon the other may be obtained.'" Hennigan v. Chargers Football Co., 431 F.2d 308, 315 (5th Cir. 1970).

The forum-selection clause states: "You agree that by engaging Offit Kurman, you submit to the jurisdiction of the courts of the State of Delaware, and that the sole venue for all matters, claims, disputes and actions related to, or arising out of your engagement of Offit Kurman are the courts of the State of Delaware located in New Castle County, Delaware."[38] The conjunction "and" establishes that this clause has two parts: (1) an agreement to submit to the

---

[36]Plaintiffs' Response, Docket Entry No 7, pp. 25-26.

[37]Defendants' Reply, Docket Entry No. 9, pp. 5-6.

[38]Terms and Conditions, Exhibit A-3 to Motion to Dismiss, Docket Entry No. 4-4, p. 3 ¶ 11 (emphasis added).

jurisdiction of the courts of Delaware, and (2) an agreement not to bring claims in any venue other than Delaware courts in New Castle County. These two agreements are complementary and do not contradict one another. Because "[a] party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another," City of New Orleans v. Municipal Administrative Services, Inc., 376 F.3d 501, 504 (5th Cir. 2004), the clause must include the second portion to ensure that the signor may only bring claims in Delaware. The result is an unambiguous forum-clause that permits the signor to be sued in Delaware and requires them to bring any suits in the state courts of Delaware in New Castle County.

Plaintiffs argue that because the first portion is a submission to jurisdiction that taken alone would not suffice to establish a mandatory forum in Delaware, the second portion must be read as only a permissive selection of forum.[39] Plaintiffs argue that this means that the requirement that "the sole venue for all matters" be Delaware courts in New Castle County only means that New Castle County is the sole venue for "suits filed in Delaware."[40] This argument lacks merit because it seeks to insert language into the contract that is not there and fails to treat the terms of the contract as equal parts of a whole. As explained above, the two parts of the forum-selection clause plainly mandatorily assign all

---

[39]Plaintiffs' Response, Docket Entry No. 7, pp. 26-27.

[40]Id. at 27

litigation related to the contracts to the courts of Delaware when taken as a whole. The court concludes that the clause is a mandatory forum-selection clause.

### D.  Dismissal for Forum Non Conveniens is Appropriate

The court has concluded that Plaintiffs consented to the forum-selection clause, that it is enforceable, and that it is mandatory. There is no dispute as to whether Plaintiffs' claims fall under the scope of the forum-selection clause. Because the clause is a mandatory clause that points to the state courts of Delaware, dismissal through the doctrine of forum non conveniens is appropriate if private- and public-interest factors weigh in favor of requiring the suit to proceed in that pre-selected forum. Barnett v. DynCorp International, L.L.C., 831 F.3d 296, 300 (5th Cir. 2016). Given the valid mandatory forum-selection cause, "the private-interest factors 'weigh entirely in favor of the preselected forum'" and the "'court may consider arguments about public-interest factors only.'" Id. (quoting Atlantic Marine, 134 S. Ct. at 582). The forum-selection clause likely controls absent "unusual circumstances." Barnett, 831 F.3d at 301.

The public-interest factors include: [1] "administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of

foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty." Weber v. PACT XPP Technologies, AG, 811 F.3d 758, 776 (5th Cir. 2016) (quoting Piper Aircraft Co. v. Reyno, 102 S. Ct. 252, 260 n.6 (1981)). Plaintiffs do not argue that these factors weigh against dismissal.[41] Since this is a malpractice action against a law firm and an attorney practicing in Delaware who handled a Delaware matter for Plaintiffs, the court concludes that the public-interest factors weigh in favor of dismissal so that the action may be brought in Delaware. No unusual circumstances are present that might counsel against dismissal in the face of a mandatory forum-selection clause. Accordingly, the court will grant Defendants' Motion to Dismiss, and the action will be dismissed without prejudice.

## IV.   Conclusion and Order

For the reasons explained above, Plaintiffs' Motion to Remand (Docket Entry No. 6) is **DENIED**, and Defendants' Motion to Dismiss for Forum Non Conveniens (Docket Entry No. 4) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 30th day of June, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[41]Plaintiffs argue only that Defendants have not met their burden to demonstrate that dismissal is warranted under the factors. Plaintiffs' Response, Docket Entry No. 7, pp. 28-29. Plaintiffs' argument depends on the assumption that the clause is permissive rather than mandatory, which changes the presumption in favor of enforcement. As explained above, the clause is mandatory.